IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 30, 2011

## STATE OF TENNESSEE v. ARTHUR DONAHUE

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 267674, 269452, 269453      Barry A. Steelman, Judge**

**No. E2011-00208-CCA-R3-CD - Filed October 6, 2011**

The defendant, Arthur Donahue, appeals the revocation of his community corrections sentence, arguing that the trial court abused its discretion by basing its revocation decision on his mere technical violations of the sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Arthur Donahue.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; William H. Cox, District Attorney General; and Bret Alexander, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On February 27, 2009, the defendant pled guilty in the Hamilton County Criminal Court to five counts of theft of property, for which he received an effective sentence of six years as a Range I offender, with eleven months, twenty-nine days to serve followed by supervised probation. On July 16, 2009, the trial court entered amended judgments and an order reflecting that the defendant's probation had been revoked and the defendant sentenced to "Phase II of the Hamilton County Community Corrections Program." Supervision of the sentence was then transferred to the Knox County Sheriff's Department Community Alternatives to Prison Program ("CAPP"). A violation report was subsequently issued

alleging that the defendant was guilty of failure to abide by the rules and regulations set by CAPP and of absconding. Thereafter, the trial court issued a series of orders that eventually resulted in the defendant's being returned to "Phase II" of the Hamilton County Community Corrections Program. Among the conditions of the program were that the defendant wear an electronic monitoring device and obey established work, school, counseling, and curfew schedules.

On November 3, 2010, the defendant was again charged with a violation of his community corrections sentence based on "curfew violations" and "tampering with his electronics." At the January 24, 2011 revocation hearing, Officer Russell Craig of the Hamilton County Community Corrections Program testified that he went over the rules and regulations of the community corrections program with the defendant during his intake on July 27, 2009. He said that the defendant was transferred by order to the Knox County CAPP and that he requested that a capias be issued after receiving a violation notice from CAPP that the defendant had failed to abide by the rules of the program and had absconded. After the defendant had been taken into custody, he was placed back in the Hamilton County Community Corrections Program on September 20, 2010. The defendant again requested that his supervision be transferred to Knoxville, but the CAPP program manager declined to let him reenter their program.

Officer Craig testified that the defendant's monitoring device was tied to a box that was plugged into a power outlet and connected to a phone jack in the home. The unit was set on "medium range," which allowed the defendant to be within a 75-foot radius of the box. Officer Craig stated that he explained to each defendant on house arrest that he had to have prior authorization to go anywhere beyond the radius of the box. He said that he received a printout each morning from a monitoring company that showed when the defendant was out-of-range of the device or when the power was shut off or the telephone disconnected.

Officer Craig testified that the defendant had a number of curfew violations between September 20, 2010, when he was returned to the Hamilton County Community Corrections Program, and November 1, 2010, when Officer Craig filed his capias request. On October 14, 2010, the defendant took approximately three hours to return home after meeting with him at his office, despite the fact that his trip to the office took him only thirty-four minutes and he was instructed to return straight home following the meeting. On October 18, 2010, the defendant, who had called to report that he was going job hunting, failed to appear as instructed for a 10:30 a.m. meeting at Officer Craig's office and did not return home until 7:40 p.m. that evening. On October 31, 2010, the defendant left his house arrest without permission at 1:32 a.m. and did not return home until 2:09 a.m. He was again gone without permission from 12:06 to 2:20 a.m. on November 1, 2010. In addition, the defendant's telephone was disconnected by the telephone company on October 20, 2010 and was not

reconnected until October 30, 2010, which meant that Officer Craig was unable to monitor his whereabouts during that time.

Officer Craig further testified that the defendant began having "slight" early morning curfew violations of ten to fifteen minutes every night almost immediately after being placed back on the community corrections program. Officer Craig, additionally, received reports of "numerous manual restarts" having taken place on the defendant's box, which occurred whenever the power to the unit was turned off. Officer Craig testified that he initially gave the defendant the benefit of the doubt and, therefore, swapped out his monitoring box for another unit. However, when he tested the defendant's old box in his office, he found that it was functional.

On cross-examination, Officer Craig acknowledged that the defendant's curfew violations could be characterized as "technical," that the defendant had been negative on all his drug tests, and that the defendant had not been arrested on any new charges during the time he was on community corrections in Hamilton County. He pointed out, however, that the defendant had been arrested during the period he was in Knox County, which had led to his prior revocation. He conceded that the defendant told him that he had ongoing transportation problems and that, although he could not recall his having done so, it was possible that the defendant had explained his late arrival home on October 14 as the result of not having been able to get a ride. He said that he had no reason to believe that the defendant's disconnected telephone was due to anything other than nonpayment and that the defendant completed all his paperwork, answered his questions, and in general was not a difficult person.

The twenty-year-old defendant testified that he lived with his sister and received a ride from her to his October 14 meeting with Officer Craig but had to rely on the nearest public bus route, which was located several miles from his house, to get back home. He also explained his missed meeting on October 18 and late return home that day as due to his difficulty in finding transportation. He said his home phone was off for ten days because his sister had to wait until she received her wages before she was able to pay the delinquent phone bill. Finally, he testified that he would be able to abide by his curfew if returned to community corrections because both his girlfriend and his sister's "old man" now had vehicles and could provide him with transportation.

On cross-examination, the defendant testified that his arrest in Knoxville was for assaulting a police officer and that he had entered a guilty plea in connection with the offense. Upon questioning by the trial court, he testified that he was at home on October 31 and November 1 when the early morning curfew violations allegedly occurred. He claimed, in fact, that on each occasion he had answered the telephone on the first ring when the

woman from the monitoring company had called to inquire into his whereabouts.

Officer Craig, recalled by the State, testified that if the defendant's monitor had called the defendant's home and received an answer, she would have written it down on the report that he received. The monitor, however, never reported having had any contact with the defendant.

At the conclusion of the hearing, the trial court found that the defendant had violated the conditions of his house arrest by his curfew violations and tampering with his monitoring equipment. The court, therefore, revoked the defendant's community corrections sentence and ordered that he serve the balance of his time in confinement. This appeal followed.

## ANALYSIS

The defendant contends that the trial court abused its discretion by revoking his community corrections sentence based on relatively minor technical violations, arguing that the trial court failed to give sufficient consideration to the fact that he "largely complied" with the conditions of his sentence and that his curfew violations were caused by his problems with transportation. The State argues that the evidence, which included the defendant's multiple curfew violations and his tampering with his monitoring equipment, was sufficient to support the trial court's finding that he violated the conditions of his community corrections sentence. We agree with the State.

The trial court may revoke a community corrections sentence upon a finding by a preponderance of the evidence that the defendant has violated the conditions of his sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). "The judgment of a trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion." Id. For a reviewing court to find an abuse of discretion, it must be shown that the record contains no substantial evidence to support the trial court's conclusion. Id.

We find no abuse of discretion in the trial court's revocation of the defendant's community corrections sentence. In reaching its decision, the trial court noted that the defendant, who had a fairly significant criminal history for one so young, had violated his prior opportunity at serving his sentence on community corrections by committing the serious offense of assaulting a police officer. The court also noted that the defendant's claim that he was at home during the October 31 and November 1 curfew violations was inconsistent with the testimony and the records of Officer Craig, whose reports indicated that the defendant had committed numerous curfew violations and had tampered with his monitoring equipment on multiple occasions. Based on this evidence, we conclude that the trial court's revocation of the defendant's community corrections sentence was proper.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's community corrections sentence and ordering him to serve his sentence in incarceration.

_____
ALAN E. GLENN, JUDGE